WESTERN DISTRICT COURT: NEW YORK
UNITED STATES OF AMERICA

MARC GRECO, JR.,

        Plaintiff,                                  **COMPLAINT**

vs.

CITY OF LOCKPORT and
CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1-4)

        Defendant.

## Jury Demand

Trial by Jury on all issues is demanded.

## Preliminary Introduction

1. This is a combined state and federal action arising from civil rights violations suffered by Plaintiff Marc Greco, Jr. on June 1, 2025, while outside his rental property located at 246 Clinton Street in the City of Lockport. The federal claims are brought under 42 U.S.C. § 1983 against all Defendants. The state common law claims for battery, assault, and false imprisonment are also brought against all Defendants. Plaintiff further asserts claims for deprivation of civil rights under both the New York State Constitution and the United States Constitution. These claims include violations of Plaintiff's rights to be free from unlawful searches and seizures, excessive force, unlawful detention, and malicious prosecution. Plaintiff seeks damages for personal injuries, including but not limited to medical expenses, consequential damages, pain and suffering, and mental anguish, against all Defendants.

## Parties

2. Plaintiff, Marc Greco, Jr., currently resides and did reside at all times relevant to these proceedings at 199 Park Avenue, Lockport, New York 14094, located within the County of Niagara and the State of New York.

3.   Upon information and belief, Defendant Officer Laura Schuler is employed by the City of Lockport Police Department and was acting in such capacity during the events which give rise to this lawsuit.

4.   Upon information and belief, Defendant John Doe 1 is employed by the City of Lockport Police Department and was acting in such capacity during the events which give rise to this lawsuit.

5.   Upon information and belief, Defendant John Doe 2 is employed by the City of Lockport Police Department and was acting in such capacity during the events which give rise to this lawsuit.

6.   Upon information and belief, Defendant John Doe 3 is employed by the City of Lockport Police Department and was acting in such capacity during the events which give rise to this lawsuit.

7.   Upon information and belief, Defendant John Doe 4 is employed by the City of Lockport Police Department and was acting in such capacity during the events which give rise to this lawsuit.

8.   Upon information and belief, the CITY OF LOCKPORT, is a municipal corporation duly organized and existing under and pursuant to the laws of the State of New York.

## Jurisdiction

9.   Plaintiff brings this action to recover damages for the violation of his civil rights under the Fourth Amendment of the United States Constitution, codified at 42 U.S.C. § 1983 and as bestowed upon the states and its citizens through the Due Process Clause by the Fourteenth Amendment of the United States Constitution.

10.   Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1332 (federal question), § 1343 (civil rights), and § 1367 (supplemental jurisdiction).

11.   Declaratory, injunctive, and equitable relief is sought pursuant to 28 U.S.C. § 2201 and § 2202.

12.   Compensatory and Punitive damages are sought pursuant to 42 U.S.C. § 1983, including but not limited to Plaintiff' lost wages, loss of consortium, and the loss of Plaintiff's liberty and freedom pursuant to the illegal and unlawful conduct of the Defendants.

13.     Costs and Attorney's fees may be awarded pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. Rule 54.

14.     As mandated by the Supremacy Clause, in relations to actions brought pursuant to 42 U.S.C. § 1983, Plaintiff does not have to comply with Municipal Law Section 50-e with regard to filing a Notice of Claim with regard to Federal Causes of Action.

15.     With that being said, Plaintiff did file a notice of claim on or about August 20, 2025. At least thirty days elapsed since the notice of claim was filed and before this complaint was filed; and in that time, the Defendants have neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

16.     At all times here mentioned, Defendants were acting under the color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## Venue

17.     This action properly lies within the Western District of New York, pursuant to 28 U.S.C. § 1343(3), because the claims arose in this judicial district and the Defendants reside in and/or do business in Niagara County.

## Factual Background

18.     Plaintiff assists his father in managing a two-unit rental property located at 246 Clinton Street in the City of Lockport.

19.     The previous tenant on the month-to-month lease for the downstairs unit was Noah Collins. Mr. Collins had recently vacated the property, and his lease had been terminated, due to ongoing hostility and conflicts between Mr. Collins and the upstairs tenants.

20.     Plaintiff's father provided Mr. Collins with thirty (30) days' written notice of termination in or around mid-April 2025, requiring him to vacate the premises by May 30, 2025. Mr. Collins confirmed to Plaintiff's father that he would vacate the unit prior to that date and he did so.

21.     On June 1, 2025, at or around 2:00 p.m., Plaintiff and his father went to the property for the purpose of changing the locks to the downstairs unit, which they reasonably believed to be vacant.

22. Upon arrival, Plaintiff and his father discovered that multiple unknown individuals were unlawfully occupying the downstairs unit without permission or legal right to be there.

23. These individuals were consuming alcohol, damaging the premises, and behaving in a hostile and threatening manner when asked to leave, including making verbal threats of violence toward Plaintiff and his father.

24. One of the individuals deliberately urinated on the floor of the apartment in an effort to provoke and intimidate Plaintiff and his father.

25. Plaintiff contacted the Lockport Police Department to report the trespassers and request assistance.

26. Three officers responded to the scene. Rather than removing the trespassers, the officers brokered an arrangement allowing them until 5:00 p.m. to vacate the premises. The officers advised Plaintiff that he should contact the police again if the individuals failed to leave.

27. At approximately 5:00 p.m., Plaintiff returned to the property alone. Upon arrival, he observed that the trespassers had not vacated and that an additional individual had arrived at the apartment.

28. One of the individuals, later identified as an individual with the first name "Nicolai," sat on the interior steps of the apartment and made repeated threats toward Plaintiff, including statements such as, "I'll kill you."

29. Plaintiff returned to his vehicle and again contacted the Lockport Police Department.

30. Four different police officers responded to the second call, including Officer Schuler with whom Plaintiff had previously had a contentious interaction during an unrelated school drop-off incident, and a younger male officer who was familiar with Plaintiff's medical condition and spinal cord stimulator.

31. From the outset of the interaction, Officer Schuler was dismissive and hostile toward Plaintiff and stated that the police would not be removing the trespassers.

32. Plaintiff informed the officers that earlier responding officers had directed the trespassers to vacate by 5:00 p.m. Officer Schuler stated that she would speak with the individuals and determine what was going on.

33. Officer Schuler subsequently informed Plaintiff that the trespassers did not have to leave and that they had a right to remain in the apartment. When Plaintiff objected and explained that they were not tenants and were making threats, Officer Schuler responded, "How do we know that?"

34. During this interaction, the trespassers continued to shout obscenities and make threats to kill Plaintiff, including in the presence and hearing of the officers.

35. One male officer instructed Plaintiff that he did not want Plaintiff walking in a particular direction. Plaintiff responded that he was on his own property and stated that he needed to return to his vehicle because he could not stand or walk for extended periods.

36. Plaintiff leaned against his vehicle while continuing to speak with Officer Schuler. He repeatedly questioned why the officers were permitting the trespassers to threaten him without intervention.

37. Plaintiff stated that he did not want to hear the threats anymore and that he would leave if nothing was going to be done. Immediately thereafter, one of the trespassers, Nicoli, again threatened to kill him.

38. Plaintiff then partially opened his vehicle door. He was not acting aggressively, was not threatening anyone, and was not violating any New York State law.

39. Immediately, the four officers rushed toward Plaintiff. Officer Schuler grabbed one of Plaintiff's arms, while a male officer grabbed the other arm and pulled it in a different direction. Another officer grabbed Plaintiff around the waist, and a fourth attempted to apply handcuffs.

40. At the time of this incident, Plaintiff was 100% disabled as a result of a work-related construction injury and had a spinal cord neuro-stimulator implanted in his lumbar spine, which was controlled by an external handheld device located in his vehicle. He also relied on a cane for ambulation, which was also in his vehicle.

41. As a direct result of the officers' actions, the spinal cord stimulator shifted, causing Plaintiff to experience intense and continuous electrical shocks throughout his body.

42. Plaintiff repeatedly told the officers that they were hurting him and that he had a medical device implanted in his back.

43. Plaintiff was handcuffed, preventing him from accessing the external controller that could have shut off the stimulator and stopped the shocks, and the officers also refused his pleas for assistance.

44. Plaintiff asked why he was being arrested and stated that he had called the police for help. The officers told Plaintiff he was being arrested for disorderly conduct and repeatedly ordered him to be quiet.

45. Plaintiff was escorted to the police vehicle by Officer Schuler and the younger male officer. He repeatedly informed them that he was disabled, in severe pain, and experiencing uncontrollable shocks from the implanted device.

46. The officers dismissed his complaints, stating that he "looked fine," and made no effort to retrieve his cane, external controller, or provide medical assistance at the scene. Along with his medical supplies being left behind, Plaintiff's vehicle was left running with the windows down and his personal belongings inside while the trespassers remained at the property.

47. While in the police vehicle, Plaintiff again requested medical assistance and explained that the stimulator needed to be turned off. The officers stated they did not know how to turn it off, even though Plaintiff had informed them how, and suggested that medical personnel could be contacted after arrival at the precinct.

48. Upon arrival at the Lockport Police Department, Plaintiff was left handcuffed in the vehicle for approximately five minutes before officers returned, all the while, Plaintiff was being continuously shocked.

49. When officers ordered the Plaintiff to exit from the vehicle, he nearly fell to the ground due to the pain he was in, the lack of his mobility device, and lack of assistance from the four officers. The officers mocked him and treated the situation as a joke.

50. Plaintiff repeatedly requested medical assistance and asked for the handcuffs to be removed because he could not walk while restrained. Eventually, a supervisory officer in a white shirt came out and removed the handcuffs.

51. Inside the precinct, Plaintiff continued to complain of severe pain and requested medical attention. Throughout the booking process the white shirt officer repeatedly told Plaintiff to "shut up" and "stop talking."

52. After some time, medical personnel were finally summoned but were unfamiliar with Plaintiff's condition, and no meaningful medical evaluation was conducted. The medical personnel also made joking remarks regarding his medical device, including the comment "Do you want us to go on Call of Duty and ask for an EMP?" as Plaintiff had advised them that a magnet that medical providers often have in their equipment could cause an emergency shut off for the device.

53. Plaintiff requested to go the hospital when it became clear that no assistance could be provided at the precinct.

54. Subsequently, the four officers from the scene and the white shirted officer began to escort Plaintiff out the rear of the building through the parking garage.

55. Plaintiff requested to exit through the front entrance of the station so that he could be picked up, explaining that the front exit was a shorter and more level walking distance due to his physical limitations.

56. The officers laughed at Plaintiff's request, denied it, and instructed him that he needed to leave and "get out," without offering assistance.

57. Plaintiff was required to walk down an inclined ramp at the rear of the station without his cane and without physical assistance, despite his visible difficulty in ambulating.

58. Plaintiff limped, relied on the wall to maintain his balance, and struggled to walk while continuing to request help.

59. The officers stood by and watched Plaintiff struggle without intervening, assisting, or modifying their chosen exit route, despite his obvious disability and distress.

60. Plaintiff's father retrieved him from outside the police station and transported him to Lockport Memorial Hospital.

61. Due to liability concerns related to the implanted device, hospital staff were required to contact the device manufacturer to shut off the stimulator. Plaintiff remained at the hospital until approximately 10:00–11:00 p.m.

62. Plaintiff was charged by Officer Schuler of the City of Lockport Police Department with the violation-level offense of disorderly conduct under Penal Law §240.20(1).

63. The charge was entirely meritless and was dismissed accordingly by the Honorable Thomas DiMillo, City of Lockport Judge, on or about July 10, 2025.

64. The day following the incident, Plaintiff was evaluated by the Abbott device team and the University at Buffalo Neurosurgery department to determine whether the spinal cord stimulator could be safely reactivated.

65. Any attempt to adjust or restore the stimulator settings caused Plaintiff to experience immediate and severe electrical shocks, and as a result, the spinal cord stimulator remained powered off for approximately one month, during which time Plaintiff experienced significantly increased pain, physical limitation, and emotional distress.

66. In or about late July 2025, Plaintiff was again evaluated by the University at Buffalo Neurosurgery team and the Abbott device team. Additional imaging, including X-rays, was obtained

and compared with imaging from before the June 1, 2025, incident and from immediately after the incident. The imaging confirmed that the stimulator leads had migrated approximately one-half inch from their prior position.

67. After extensive adjustments, the medical team was able to partially restore function to the stimulator by activating only one side of the device, which reduced but did not eliminate Plaintiff's pain and limitations.

68. Plaintiff's treating providers have advised that further setting changes may be attempted, but that additional surgery may be required to revise or replace the leads or the stimulator device entirely.

69. In or about December 2025, Plaintiff was evaluated by specialists at Excelsior Orthopaedics regarding his ongoing condition and diminished function of the spinal cord stimulator.

70. Plaintiff reported that he did not wish to resume or increase medications, as prior medications were no longer effective and caused adverse side effects, and that his primary concern was restoring proper function to the stimulator.

71. Since the June 1, 2025 incident, the stimulator has not functioned as effectively as it did beforehand. Settings that previously provided relief for approximately six months now require adjustment every two to three months.

72. In fact, prior to the incident, Plaintiff had not required any setting changes for approximately ten months, as the device had been functioning well and providing stable pain relief.

73. As a result of the incident and the diminished functionality of the stimulator, Plaintiff now experiences increased difficulty with mobility and routine daily activities, including dressing, bathing, caring for his children, and performing household tasks.

74. Plaintiff is now forced to rely more heavily on his cane and on assistance from family members than he did prior to the incident.

75. Plaintiff has also experienced increased anxiety and fear related to leaving his home, driving, and interacting with law enforcement due to concerns that his medical condition will not be accommodated or taken seriously.

76. As a result of the emotional distress and mental anguish Plaintiff suffered due to the June 1, 2025 incident, he has sought treatment for his mental health; however, antidepressant medications prescribed by his providers have caused significant side effects and have provided limited benefit.

77. Further, due to restrictions associated with his workers' compensation status, Plaintiff has been unable to obtain counseling or therapy services recommended for his condition.

78. As a result of the incident, Plaintiff sustained severe physical injuries, increased disability, chronic pain, emotional distress, and a diminished quality of life.

79. Upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless disregard and/or intentional and unlawful conduct on the part of the agents, servants and/or employees of the CITY OF LOCKPORT and CITY OF LOCKPORT POLICE OFFICERS including Defendant Schuler and Defendants John Doe 1-4.

80. Upon information and belief, as a direct and proximate result of the foregoing, Plaintiff Marc Greco Jr. sustained severe bodily injury, emotional distress, and ongoing damages.

**First Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for the excessive use of force used against the Plaintiff by CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1-3), in their individual capacities.**

81. Plaintiff, Marc Greco, Jr., repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

82. To establish a claim for excessive force, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." Cass v. City of Abilene, 814 F.3d 721, 731 (5th Cir. 2016). Whether the force used was excessive or unreasonable is a fact intensive inquiry that depends on the "totality of the circumstance." Tennessee v. Garner, 471 U.S. 1, 8-9 (2010).

83. In the case at bar, Plaintiff suffered severe injuries to his entire body, particularly to his arms and back, all of which required immediate hospital attention and ongoing medical treatment.

84. On June 1, 2025, Plaintiff, a disabled and unarmed individual with a spinal cord neuro-stimulator implanted in his lumbar spine, partially opened his vehicle door while on his own property. Before he had fully exited, the Defendant Police Officers immediately and without justification rushed toward him. Officer Schuler grabbed one of Plaintiff's arms, another officer grabbed the other arm and pulled it in a different direction, a third officer grabbed Plaintiff around the

waist, and a fourth attempted to apply handcuffs. At this time, Plaintiff was fully compliant with the law, posed no threat, and was taking no aggressive action.

85. Throughout the encounter, Plaintiff repeatedly informed the Defendant Officers that he was disabled, that he had a spinal cord neuro-stimulator implanted in his back, and that their actions were causing him extreme pain. Despite these clear statements, the Defendant Officers mocked and ridiculed him, dismissed his complaints, all while continuing to manhandle him.

86. The use of force by four officers against a single, disabled, unarmed individual was objectively excessive and unreasonable. The harm from their initial force continued after Plaintiff was restrained, as the Officers refused to remove his handcuffs or provide assistance, leaving him in severe pain and subjected to uncontrollable electrical shocks from his implanted neuro-stimulator.

87. This excessive and unjustified physical force caused the implanted neuro-stimulator device in Plaintiff's back to shift, resulting in continuous and excruciating electrical shocks throughout his body. Plaintiff was left in the back of a patrol car for an extended period, yelling for help and in obvious distress, yet the Defendant Officers displayed no urgency or concern for his medical condition. After a significant delay, Plaintiff was eventually transported from the police station to the hospital by his father; however, hospital personnel were initially unwilling to treat him due to liability concerns related to the implanted device. A specialist had to be called in to disable the neuro-stimulator, which did not occur until approximately four hours after the incident began, leaving Plaintiff to endure unrelenting electrical shocks during that entire time.

88. As a result of the incident, the neuro-stimulator device was severely compromised and remained shut off for nearly four weeks until the settings could be safely recalibrated. Even after repair attempts, the device has not functioned properly, requiring Plaintiff to undergo repeated adjustments and, at times, manage pain with medications, some of which were later discontinued due to adverse side effects.

89. Plaintiff continues to experience diminished device functionality, increased disability, chronic pain, and reliance on assistance from others for daily activities.

90. The actions of the Defendant Officers were entirely without legitimate basis, demonstrated a reckless disregard for Plaintiff's medical condition and human dignity, and caused Plaintiff significant physical pain, emotional distress, and lasting trauma.

91. In the present case, all force used was clearly in excess of any need, given that there was no justification to seize Plaintiff, let alone apply force against him. The force used was objectively

unreasonable in light of the totality of the circumstances, including Plaintiff's disability, medical condition, and lack of resistance.

92. This excessive use of force by the above Defendants constitutes a violation of the Fourth Amendment as an unreasonable seizure.

93. Plaintiff demands costs and attorney's fees pursuant to 42 U.S.C. §1988.

### Second Cause of Action for the Common Law Tort of Battery Against the CITY OF LOCKPORT and CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1-3), in Their Individual and Official Capacities

94. Plaintiff, Marc Greco, Jr., repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

95. The elements of a cause of action [to recover damages] for battery are bodily contact, made with intent, and offensive in nature." Tillman v Nordon, 4 AD.3d 467, 468 (2004).

96. On the afternoon of June 1, 2025, four Defendant Police Officers, without justification, intentionally and forcibly made physical contact with Plaintiff. Officer Schuler grabbed one of Plaintiff's arms while another officer grabbed the other arm and pulled it in the opposite direction. A third officer grabbed Plaintiff around the waist, and a fourth officer attempted to apply handcuffs.

97. Plaintiff did not consent to any of the physical contact and posed no threat, engaged in no unlawful conduct, and was fully compliant with the law.

98. Plaintiff repeatedly informed the Defendant Officers that he was disabled, relied on a cane for ambulation, and had a spinal cord neuro-stimulator implanted in his back. He further stated that their actions were causing him severe pain and requested assistance.

99. The Defendant Officers intentionally ignored Plaintiff's statements, continued the physical restraint, and mocked and ridiculed him, demonstrating that their contact was deliberate, offensive, and unjustified.

100. As a direct result of the Defendants' intentional conduct, Plaintiff sustained severe physical injuries, including displacement of the implanted neuro-stimulator, causing continuous and excruciating electrical shocks throughout his body, severe pain, and temporary incapacitation.

101. Plaintiff was then detained in the back of the police vehicle while still experiencing these electrical shocks, during which time he was unable to access the external controller for his neuro-stimulator, which could have stopped the shocks and associated pain.

102. Plaintiff was subsequently transported to Lockport Police Department where no medical relief was provided and had to be transported to Lockport Memorial Hospital by his father after being released, where emergency medical personnel required the assistance of the device manufacturer and a specialist to safely disable the neuro-stimulator, leaving Plaintiff to suffer in extreme pain for several hours after the battery.

103. Plaintiff has since required ongoing follow-up care at the University at Buffalo Neurosurgery department and Excelsior Orthopaedics due to complications caused by the battery, including diminished functionality of his neuro-stimulator, persistent pain, and physical limitations.

104. Plaintiff satisfies all three elements of battery. He was subjected to direct bodily contact by the Defendant Officers, the contact was intentional, and it was objectively offensive, particularly in light of Plaintiff's disability, medical condition, and fully compliant behavior.

105. The Defendant Officers clearly intended to make physical contact, as demonstrated by their coordinated efforts to grab, twist, restrain, handcuff, and transport Plaintiff. The conduct was deliberate and in no way accidental, negligent, or justified.

106. Defendant City of Lockport is liable for the intentional tortious conduct of its police officers under the doctrine of respondeat superior, as the battery was committed by Defendant Officer Schuler and Defendant Officers John Doe 1-3 within the scope of their employment and while performing duties related to their official law enforcement roles.

107. As a direct and proximate result of the Defendant Officers' battery, Plaintiff has suffered and continues to suffer severe bodily injury, chronic pain, emotional distress, ongoing medical expenses, diminished mobility, and a reduced quality of life, for which he is entitled to recover damages under New York State law.

**Third Cause of Action for the Common Law Tort of Assault Against the CITY OF LOCKPORT and CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1-3) in Their Individual and Official Capacities.**

108.     Plaintiff repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

109.     "To sustain a cause of action to recover damages for assault, there must be proof of physical conduct placing the plaintiff in imminent apprehension of harmful contact" <u>Cotter v Summit Sec. Servs., Inc.</u>, 14 AD.3d 475 (2005).

110.     In the present matter, Defendant Officer Schuler and Defendant Officers John Doe 1-3 subjected Plaintiff to an assault when they aggressively advanced toward him, grabbed his arms and body, and pulled him towards the ground.

111.     At all times, Plaintiff posed no threat, engaged in no unlawful conduct, and was fully compliant with all lawful directives.

112.     The actions of the Defendant Officers placed Plaintiff in imminent apprehension of harmful and offensive contact, as he reasonably feared being injured due to their aggressive approach and his known disability and implanted neuro-stimulator.

113.     Plaintiff repeatedly informed the Defendant Officers that he was disabled, relied on a cane for mobility, and had a spinal cord neuro-stimulator implanted in his back. He further stated that the officers' actions were causing him severe pain and requested assistance.

114.     The Defendant Officers acted intentionally, without justification, and in reckless disregard of Plaintiff's known medical condition, causing him to experience immediate fear of injury, extreme emotional distress, and severe physical pain.

115.     Plaintiff reasonably believed that he was about to be harmed by the Defendant Officers, satisfying the apprehension element of assault, regardless of whether the officers ultimately caused further physical contact beyond the battery.

116.     The actions of the Defendant Officers were malicious and served no legitimate law enforcement purpose, as Plaintiff had committed no unlawful act, posed no threat, and had called the police for assistance regarding trespassers.

117.     Defendant City of Lockport is liable for the intentional tortious conduct of its police officers under the doctrine of respondeat superior, as the assault was committed by Defendant Officer Schuler and Defendant Officers John Doe 1-3 within the scope of their employment and while performing duties related to their official law enforcement roles.

118.	As a direct and proximate result of the Defendant Officers' assault, Plaintiff has suffered and continues to suffer severe emotional distress, fear, anxiety, physical pain, and a diminished quality of life, for which he is entitled to recover damages under New York State law.

## Fourth Cause of Action for Violation of the Fourth Amendment as per 42 U.S.C. §1983 for Unreasonable Seizure, False Arrest, and False Imprisonment Against CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1-4), in Their Individual Capacities.

119.	Plaintiff, Marc Greco, Jr., repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

120.	To maintain a claim for unlawful arrest, a plaintiff must establish: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. See, Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994).

121.	In the present action, Plaintiff can make out all the elements of an unlawful arrest claim regarding the actions of the Defendant.

122.	On June 1, 2025, Plaintiff was lawfully present on his own property and called the Lockport Police Department to report multiple trespassers unlawfully occupying his downstairs unit.

123.	Plaintiff was fully cooperative with all law enforcement instructions and repeatedly informed the responding officers that he was disabled and had a spinal cord neuro-stimulator implanted in his back.

124.	Despite Plaintiff's full compliance, Defendant Officers intentionally and without legal justification arrested him for disorderly conduct, a charge that was meritless and later dismissed by the Honorable Thomas DiMillo, City of Lockport Judge, on or about July 10, 2025.

125.	Defendant Officers intended to confine Plaintiff when they handcuffed him and transported him to the police station. Plaintiff was fully aware of this confinement, as evidenced by his repeated questioning of the officers regarding the reason for his arrest and his statements that he had called the police for help.

126.    Plaintiff did not consent to the confinement in any way, and the detention was not otherwise privileged. There was no warrant for Plaintiff's arrest, and he was not committing, nor did the officers have probable cause to believe he was committing, any offense of law.

127.    Defendant Officers had full knowledge of Plaintiff's disability and medical condition, including that the implanted neuro-stimulator was causing him severe and uncontrollable electrical shocks due to their prior physical restraint, and yet they refused to accommodate or provide medical assistance, prolonging his pain and distress during the period of confinement in the patrol vehicle and at the precinct.

128.    Defendant Officers' conduct in arresting Plaintiff was not a legitimate exercise of governmental authority, but rather a malicious, retaliatory, and harassing act, given that Plaintiff had contacted the police seeking assistance against trespassers and that Officer Schuler had a prior contentious interaction with Plaintiff.

129.    As a direct and proximate result of the Defendant Officers' actions, Plaintiff suffered emotional distress, fear, humiliation, and severe mental anguish, and endured physical pain exacerbated by the malfunction and misalignment of his neuro-stimulator device during the arrest.

130.    Such conduct, in conjunction with all facts alleged herein this complaint, constitutes that all named Defendants caused, in whole or in part, Plaintiff to be unreasonably seized and falsely imprisoned as defined by law.

131.    Such deprivation of Plaintiff's right to liberty and happiness were in violation of the rights secured to Plaintiff by the Fourth Amendment of the United States Constitution and by Title 42 U.S.C. § 1983.

132.    As a result of the above-referenced Defendant's deprivation of Plaintiff' civil and Constitutional rights, Plaintiff has incurred damages, including emotional distress, physical pain, medical expenses, and other consequential harm, in an amount to be determined at trial.

133.    Plaintiff demand costs and attorney fees pursuant to 42 U.S.C. § 1988.

### Fifth Cause of Action for the State Claim of False Arrest and False Imprisonment Against the CITY OF LOCKPORT and CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1- 4), in Their Official and Individual Capacities.

134.    Plaintiff, Marc Greco, Jr., repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

135.    The elements for a state claim for illegal arrest and imprisonment are identical to those of a federal claim in the second circuit.

136.    Further and in this instance, (1) a notice of claim was served on or about August 16, 2025; (2) at least thirty days elapsed since the notice of claim was filed and before this complaint will be filed; and (3) in that time, the defendant neglected or refused to satisfy the claim." Coggins v. Cty. Of Nassau, 988 F. Supp. 2d 231, 251 (EDNY 2013).

**Sixth Cause of Action for violations of the Fourth, Sixth, and Fourteenth Amendments of the US. Constitution as per 42 U.S.C. § 1983 for Plaintiff's right to be free from malicious prosecution against CITY OF LOCKPORT POLICE OFFICER LAURA SCHULER AND OFFICERS JOHN DOE (1- 4) in Their Individual and Official Capacities.**

137.    Plaintiff, Marc Greco, Jr., repeats and reiterates each and every foregoing allegation of this complaint with full force and effect as if set forth at length in this cause of action.

138.    To prevail on a § 1983 claim for malicious prosecution, a Plaintiff must plead (1) the initiation or continuation of a criminal proceeding; (2) termination of the proceeding in his favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the Defendants' actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997).

139.    To maintain a claim that Disorderly Conduct was committed under the relevant subsection, an individual must, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: in a public place: use abusive or obscene language or make an obscene gesture.

140.    As set forth previously, Plaintiff exited his vehicle to discuss the trespassing matter further with Defendant Officers but did not do so in a manner to cause public inconvenience, annoyance or alarm, or recklessly create a risk thereof.

141.    Defendant Officers, including Officer Schuler, therefore initiated this charge against Plaintiff without the requisite probable cause.

142.    The charge was ultimately dismissed by the Honorable Thomas DiMillo, City of Lockport Judge, on or about July 10, 2025, thereby satisfying the favorable termination element.

143. As the lack of probable cause to initiate these proceedings has been sufficiently pled, there is no need to independently plead malice. Malice can be inferred from the lack of probable cause. Cruz v. City of New York, No. 08 Civ. 8640 (LAP), 2010 WL 3020602, at (S.D.N.Y. July 27, 2010); Bleiwas v. City of New York, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at (S.D.N.Y. Aug. 15, 2017).

144. Nevertheless, even if an independent showing of malice were required, Officer Schuler's prior contentious interaction with Plaintiff, coupled with the fact that Plaintiff had called the police for assistance regarding trespassers, demonstrates that the criminal proceeding was at least partially motivated by retaliatory intent and animus toward Plaintiff.

145. Plaintiff was required to appear in court on multiple occasions regarding the unlawful charge of Disorderly Conduct. Further, he had to retain counsel had to file a motion in his behalf to get these charges dismissed. Thus, Plaintiff suffered a sufficient post-arrest deprivation of liberty to trigger a different form of seizure than that of the arrest itself and thus, a malicious prosecution claim is warranted. Swartz v. Insogna, 704 F.3d 105 (2nd Circuit Court of Appeals, 2013).

146. As a direct and proximate result of the Defendants' actions, Plaintiff suffered emotional distress, humiliation, mental anguish, and damage to his reputation, all in an amount to be determined at trial.

147. Plaintiff demands costs and attorney fees pursuant to 42 U.S.C. § 1988.

## Punitive Damages against all Defendants aside from the City of Lockport, in their individual Capacities.

148. Plaintiff incorporates by reference all of the allegations set forth herein in this Complaint as if fully set forth herein.

149. All Defendants, in their individual capacities, were deliberately indifferent to Plaintiff's Constitutional rights as a result of their unconscionable and unjustified force and arrest of said Plaintiff who was doing nothing even remotely improper or illegal.

150. Punitive damages are justified against the above-stated Defendants for their deliberate indifference and malice towards the Plaintiff herein.

WHEREFORE, the Plaintiff demands judgment on the above counts against the Defendants, their units, their officers, employees, against and other persons acting in concert or participation with them as stated above, and award the following amounts:

a. Compensatory damages in favor of the Plaintiffs in an amount to be determined by a jury;

b. Exemplary damages in favor of the Plaintiff;

c. Costs of this action, including reasonable attorney fees to the Plaintiff Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, U.S.C. 1988 (1976); and

d. Such other relief as the court may deem appropriate.

DATED:   February 14, 2026
         Darien Center, New York

By:   /s/ Matthew Albert, Esq.
      The Law Offices of Matthew Albert Esq.
      2166 Church Rd.
      Darien Center, New York 14040
      mattalbertlaw@gmail.com
      Office: (716) 445-4119
      Fax: (716) 608-1388